**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **PHYLLIS D. LYLES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:13-cv-154 (MTT) (CHW) |
| | : | |
| **CAROLYN W. COLVIN,** | : | **Social Security Appeal** |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Phyllis D. Lyles' application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff, who was born on August 13, 1959, first applied for Title XVI benefits on April 1, 2010. (Pl.'s Br, Doc. 12, pp. 1-2). Plaintiff's alleged onset date is June 1, 2007, the date Plaintiff stopped working as a school bus driver in Bleckley County. (R. 140, 144, 193). Plaintiff claims to be disabled due to "hypertension, arthralgias of the hand, hypothyroidism, depression, personality disorder, and borderline intellectual functioning." (*Id.*). A reviewing administrative law judge ("ALJ"), however, determined that no evidence supported Plaintiff's alleged seizures, thyroid problems, schizophrenia and "manual difficulties," and that the claimant's biggest problem was, in fact, her alcohol abuse. (R. 25-26). The ALJ also determined that Plaintiff was not credible because, among other things:

- Plaintiff's subjective reports varied widely;

- Plaintiff did not accurately divulge her history of alcohol abuse;

- Plaintiff's father indicated that Plaintiff "fakes her seizures," (R. 423, 500);

- The evidence suggested that Plaintiff suffered from seizures far less frequently than claimed, and also that Plaintiff's seizures were related to alcohol or prescription-medication withdrawal; and

- Plaintiff had "good activities of daily living."

(R. 25-27)

At a hearing held before the ALJ on October 25, 2011, Plaintiff claimed that she was unable to work primarily because she was "getting to where I can't remember nothing." (R. 47). Plaintiff's sister claimed that Plaintiff suffered from nervousness, suicidal thoughts, and seizures which occasionally caused Plaintiff to shake uncontrollably, but which generally caused Plaintiff merely to stare into space. (R. 76-82). The ALJ, however, ultimately found Plaintiff "not disabled," and the Appeals Council denied review in Plaintiff's case on March 21, 2013. (R. 1-3). Plaintiff now seeks review before this Court pursuant to "sentence four" of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). She argues only that the ALJ "erred in minimizing the psychological evidence of record so as to exclude the application of Listings 12.04 and 12.06." (Pl.'s Br, Doc. 12, p. 3).

## STANDARD OF REVIEW

The courts have a narrow role in reviewing claims brought under the Social Security Act. Judicial review is limited to a determination of whether the Commissioner's decision is supported by "substantial evidence," as well as whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).

"Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Rather, courts may only scrutinize the record to assess the reasonableness of the Commissioner's factual findings. *Id.* Even if the evidence in the record preponderates against the Commissioner's decision, that decision must be affirmed if it is supported by substantial evidence.

The courts review questions of law *de novo*, and the Commissioner's "[f]ailure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *but see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a Social Security appeal).

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's alleged disability, the Commissioner typically follows a five-step "sequential evaluation process." 20 C.F.R. § 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. At step two, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that meets the

duration requirement. This step has been described as a "reasonable administrative convenience designed to screen out groundless claims." *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987).

At step three, the Commissioner determines whether the claimant's impairments meet or equal the severity of one or more of the "listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is "disabled." If not, the Commissioner assesses the claimant's residual functional capacity ("RFC"), and then proceeds to step four where she evaluates the claimant's ability to perform past relevant work. At step five, the Commissioner evaluates the claimant's ability to adjust to "other work." A finding, at either step four or step five, that a claimant is capable of working precludes a finding of "disabled."

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least April 1, 2010, her application date. (R. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "hypertension, possible seizure-like events, possible hypothyroidism, possible arthralgias with slightly diminished hand strength, possible depression, a personality disorder, possible borderline intellectual functioning, and substance abuse."[1] (*Id.*).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the "listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ specifically considered

---

[1] Plaintiff argued that the ALJ erred at step two by "begrudgingly" classifying some of Plaintiff's psychological ailments as "mere possibilities." (Pl.'s Br, Doc. 12,, pp. 3-4). Plaintiff cited no supporting law, and no law in fact appears to support Plaintiff's claim. Additionally, as the Eleventh Circuit has repeatedly noted, the failure of an ALJ to find a *particular* impairment "severe" at step two is generally harmless because "the finding of *any* severe impairment whether or not it results from a single severe impairment or a combination of impairments . . . is enough to satisfy step two." (*Heatley v. Comm'r*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) (punctuation omitted). Therefore, even if the ALJ erred by classifying some Plaintiff's severe impairments as mere possibilities, that error was harmless.

listings 1.02 ("Major dysfunction of a joint"), 4.00 ("Cardiovascular System"), 9.00 ("Endocrine Disorders"), 11.03 ("Epilepsy"), 11.04 ("Central nervous system vascular accident"), 12.02 ("Organic mental disorder"), 12.03 ("Schizophrenic, paranoid and other psychotic disorders"), 12.04 ("Affective disorders"), 12.08 ("Personality disorders"), and 12.09 ("Substance addiction disorders"). The ALJ did not expressly consider listing 12.06 ("Anxiety related disorders"), but he did consider the "paragraph B criteria" which are common to many of the Mental Disorder listings, including listings 12.04 and 12.06. In order to satisfy the "paragraph B criteria," a claimant must show that his or her impairments cause at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;[2]

The ALJ, though, found that Plaintiff:

- Had only mild restrictions in her activities of daily living;
- Had only moderate difficulties in maintaining social functioning;
- Had only moderate difficulties in maintaining concentration, persistence and pace; and
- Had no episodes of decompensation satisfying the extended duration requirement.

(R. 15)

Partially as a result of his "paragraph B" findings, the ALJ determined that Plaintiff did not satisfy any of the relevant listings. Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform:

---

[2] The first three functional areas—activities of daily living; social functioning; and concentration, persistence or pace—are graded on a five-point scale: (i) none; (ii) mild; (iii) moderate; (iv) marked; and (v) extreme. The fourth functional area—episodes of decompensation—is graded on a four-point scale: (i) none; (ii) one or two; (iii) three; and (iv) four or more. *See* 20 C.F.R. § 416.920a(c)(4).

the full range of light work . . . with some exceptions. Specifically, the claimant must work in a temperature-controlled environment, and she must have no exposure to industrial hazards. Additionally, the claimant should perform only simple tasks, which must be done in a structured environment where there will be help setting and reaching goals. Finally, the claimant should have no more than limited public contact.

(R. 16)

Based on this RFC finding, the ALJ found, at step four, that Plaintiff could not perform any of her past relevant work. (R. 27). At step five, though, the ALJ determined that Plaintiff could make an adjustment to other work. (R. 28-29). Specifically, the ALJ determined that Plaintiff could work as an "Officer Helper," "Routing Clerk," or "Mail Clerk." (*Id.*). Therefore, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff argues only that the ALJ "erred in minimizing the psychological evidence of record so as to exclude the application of Listings 12.04 and 12.06." (Pl.'s Br, Doc. 12, p. 3). As the Commissioner notes, there is no indication in the record that Plaintiff was ever medically diagnosed with an anxiety disorder, (Resp., Doc. 13, p. 5), and as a result, it is not clear why Plaintiff now argues that the ALJ should have found her "disabled" under listing 12.06 ("Anxiety related disorders"). Plaintiff's arguments all appear to challenge only the ALJ's "paragraph B" findings which are common to both listings 12.04 and 12.06. Because there is therefore no reason to consider listings 12.04 and 12.06 separately,[3] there is also no need for the Court to dwell on Plaintiff's decision to claim disability under listing 12.06 in the instant appeal. Rather, because substantial evidence supports the ALJ's "paragraph B" findings, the Commissioner's decision should be affirmed.

---

[3] Indeed, Plaintiff did not separately assess these listings in her brief, even though the listings share only the "paragraph B criteria" in common.

At step three of his analysis, the ALJ considered Plaintiff's impairments—severe and non-severe, singly and in combination—to determine whether they met or equaled one or more of the listings in Appendix 1. (R. 14-15). Regarding the "paragraph B criteria," the ALJ made the following findings:

> In activities of daily living, the claimant has mild restriction. The claimant independently performs personal care as well as routine household chores such as cooking and cleaning. The claimant drives, shops, visits with family and friends, plays board games and cards, and babysits her young grandson (Exhibit 5E; Exhibit 6E; Exhibit 13E; Exhibit 14E; Exhibit 3F; Exhibit 8F). In addition, the claimant worked after her alleged onset [date] as a driver on a construction site until January 2008 (Exhibit 1E; Exhibit 4E; Exhibit 8E; Exhibit 9E).
>
> In social functioning, the claimant has moderate difficulties. Although the claimant lives in her own house, her son and his girlfriend have sometimes stayed with her. In addition, the claimant regularly babysits her young grandson, visits with family and friends, drives, shops, attends church, and has had a boyfriend with whom she has been intimately involved (Exhibit 5E; Exhibit 6E; Exhibit 13E; Exhibit 14E; Exhibit 3F; Exhibit 8F).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant independently performs personal care as well as routine household chores. The claimant also drives, shops, visits with family and friends, watches TV, enjoys playing board and card games, and babysits her young grandson. She can, therefore, concentrate as well as pace herself and persist in performing at least simple tasks. Of note, the claimant's substance abuse negatively influences her functioning in this domain, and her capacity would likely be better if she abstained from alcohol.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

(R. 15)

In challenging the ALJ's step-three findings, Plaintiff appears to raise only two arguments, neither of which warrants remand. Plaintiff first argues that the ALJ erred in "find[ing] that Plaintiff has no episodes of decompensation despite acknowledging and recording two inpatient psychological stays of ten and four days['] duration respectively based on intent to commit suicide." (Pl.'s Br., Doc. 12, p. 4). These episodes, however, do not meet the definition of an "episode of decompensation of extended duration," which may be found in the Mental Disorders section of Appendix 1. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4). That definition provides that "[t]he term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, *each lasting for at least 2 weeks*." *Id.* (emphasis added). Because Plaintiff's only two documented "psychological stays" do not satisfy this basic regulatory definition, there is no basis for this Court to conclude that the ALJ erred in finding that Plaintiff "experienced no episodes of decompensation."

Plaintiff's second argument is similarly precluded by the record, the applicable regulations, and the relevant case law. Plaintiff second argued that the ALJ "essentially ignored" the opinion of Dr. Marvin Long, a non-treating examining psychologist who performed a 2010 psychological evaluation. (Ex. 3F; Pl.'s Br, Doc. 12, pp. 4-6).

Dr. Long found that Plaintiff was "not as limited as [her] overall profile would suggest," but he also concluded, based on his one-time evaluation, that it was "unfavorable that [Plaintiff] could go into any type of work setting in view of her emotionality[] and seizure activities." (R. 357-59).

In assessing Dr. Long's opinion, the ALJ expressly stated:

I afford reduced weight to the views of the examining psychologist (Exhibit 3F), at least in so far as he suggested the claimant could not work. Firstly, such

conclusions invade the province of the Administrative Law Judge. Over and above that, however, the longitudinal evidence indicates the claimant provided the examining psychologist much disinformation regarding her medical and mental health history. Moreover, the psychologist wandered somewhat outside his expertise in suggesting that the claimant could not work because of her medical problems.

(R. 27)

Substantial evidence supports the ALJ's assessment of Dr. Long's evaluation. As made clear in both the regulations and in the relevant case law, medical-source opinions indicating that a claimant is "unable to work" are not dispositive of the issue of disability. *See* 20 C.F.R. § 416.927(d) ("Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case"); *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) ("We agree with the [Commissioner's] assertion that a physician's statement that a claimant is disabled is not dispositive of the issue of disability"). In accordance with these well-established authorities, the ALJ did not err by noting that Dr. Long improperly wandered outside of his own field of expertise and into the Commissioner's province by stating that Plaintiff likely could not work due to her "emotionality[] and seizure activities."

The ALJ also did not err in determining that Dr. Long's opinion was based, in part, on "disinformation" that was not supported by the longitudinal evidence. Although Dr. Long noted that Plaintiff was "tearing" and "very emotional" on the day of his examination, (R. 354), Dr. Long appears to have based his seizure findings on the word of both Plaintiff, whom the ALJ discredited, and Plaintiff's father, who later indicated that Plaintiff was "faking her seizures." (R. 423, 500). Moreover, the ALJ does not appear to have discounted Dr. Long's opinion simply by referencing the findings of non-examining State Agency reviewers, as Plaintiff suggests.

9

(Pl.'s Br., Doc. 12, pp. 5-6). Rather, the ALJ properly noted that the "record[] as a whole" supported the finding, by the "State Agency psychologists who reviewed the documentary evidence," that Dr. Long's opinion was not supported by the longitudinal evidence.

## CONCLUSION

Because Plaintiff failed to show that the ALJ erred at step three, and because substantial evidence supports the Commissioner's decision as a whole, it is **RECOMMENDED** that the Court **AFFIRM**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 16th day of July, 2014.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge